UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| EMMA MARTINEZ, | ) |
| Plaintiff, | ) Case No. CV 05-5467 AJW |
| v. | ) MEMORANDUM OF DECISION |
| JO ANNE B. BARNHART, Commissioner of the Social Security Administration, | ) |
| Defendant. | ) |

Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for supplemental security income ("SSI") benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

Plaintiff filed an application for SSI benefits on December 29, 1999.[JS 2]. Following a hearing, Administrative Law Judge Alexander Weir III (the "ALJ") denied plaintiff's application in a written decision dated September 2, 2004. [AR 20-28]. The ALJ found that plaintiff had medically-determinable impairments consisting of osteoarthritis, hypertension, and a depressive disorder, not otherwise specified, but that only her osteoarthritis was "severe." [AR 27]. The ALJ determined that plaintiff retained the residual functional capacity ("RFC") to perform medium work, and that her RFC did not preclude plaintiff from performing

her past relevant work as a child monitor and a toy packager. [JS 2; AR 28]. The Appeals Council denied plaintiff's request for review of the ALJ's decision. [AR 5-7].

### Standard of Review

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or if it is based on the application of incorrect legal standards. Ukolov v. Barnhart, 420 F.3d 1002, 1004 (9th Cir. 2005); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is more than a mere scintilla but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401 (1971); Thomas, 278 F.3d at 954. Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (quoting Consolidated Edison Co. of New York v. N.L.R.B., 305 U.S. 197, 229 (1938)); Thomas, 278 F.3d at 954. The court is required to review the record as a whole, and to consider evidence detracting from the decision as well as evidence supporting the decision. Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir.1999)).

**Past relevant work finding**

Plaintiff contends that the ALJ erred in finding that plaintiff could perform her past relevant work because he relied on vocational expert testimony that "is a fiction imagined solely by the ALJ." [JS 4].

A claimant is "not disabled" if he retains the residual functional capacity to perform the "actual functional demands and job duties of a particular past relevant job" or the "functional demands and job duties of the occupation as generally required by employers throughout the national economy." Pinto v. Massanari, 249 F.3d 840, 845 (9th Cir. 2001) (quoting Social Security Ruling ("SSR") 82-62); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005); Villa v. Heckler, 797 F.2d 794, 798 (9th Cir. 1986) ("The claimant has the burden of proving an inability to return to his former type of work and not just to his former job."). Information from the DOT, or the testimony of a vocational specialist, may be used to ascertain the demands of an occupation as ordinarily required by employers throughout the national economy. SSR 82-61, 1982 WL 31387, at *2; Villa, 797 F.2d at 798; cf. Maier v. Commissioner of the

1  Social Sec. Admin., 154 F.3d 913, 915 (9th Cir. 1998) (per curiam) (holding that the ALJ properly relied
2  on expert testimony to deviate from the DOT job classification at step five).
3  　　　　In his decision, the ALJ wrote:
4  　　　　I asked [the vocational expert] whether a hypothetical individual with the claimant's
5  　　　　functional limitations could perform her past relevant work. She replied that such an
6  　　　　individual could return to her past relevant work as a child monitor and as a toy packager as
7  　　　　generally performed in the national economy.
8  [AR 27].
9  　　　　Unfortunately, the ALJ misrepresented the hearing testimony as documented in the transcript of the
10 February 10, 2004 administrative hearing. [See AR 332-345]. The transcript unequivocally demonstrates
11 that neither the ALJ nor plaintiff's counsel asked *any* hypothetical questions of the vocational expert. [AR
12 342-344]. The ALJ merely asked the vocational expert to evaluate plaintiff's past relevant work. [AR 343].
13 Relying on the Dictionary of Occupational Titles ("DOT"), the vocational expert classified plaintiff's past
14 relevant work as a child monitor, DOT job number 301.677-010, and toy packager, DOT job number
15 920.587-018, both unskilled, medium occupations as generally performed. [AR 343-344]. The vocational
16 expert was not asked to offer, and did not offer, any opinion about the ability of a hypothetical person or
17 plaintiff to perform those jobs.
18 　　　　Because the claimant bears the burden of proving her inability to perform past relevant work, the
19 ALJ is not required to elicit or rely on vocational expert testimony in order to support a finding of non-
20 disability at step four.  Where, however, the ALJ's step-four finding rests on a determination that the
21 claimant can perform her past relevant work "as generally performed," rather than as actually performed
22 in a particular past job, the DOT or a vocational expert must be consulted to determine the "functional
23 demands and job duties of the occupation as generally required by employers throughout the national
24 economy." Pinto, 249 F.3d at 845-846.  If the ALJ wishes to rely on a vocational expert's testimony, the
25 "vocational expert merely has to find that a claimant can or cannot continue his or her past relevant work
26 as defined by the regulations ...." Pinto, 249 F.3d at 845.  Even with such vocational expert testimony,
27 however, the ALJ is not "in any way relieved of his burden to make the appropriate findings to insure that
28 the claimant really can perform his or her past relevant work." Pinto, 249 F.3d at 845.

1 Here, the ALJ necessarily found that plaintiff can perform her past relevant work *as generally*
2 *performed.* The ALJ did not make that explicit in his formal findings [AR 28], where he simply found that
3 plaintiff "remains capable of performing her past relevant work."[AR 28]. However, he "accepted" the
4 vocational expert's "opinion" that plaintiff could perform her "past relevant work as a child monitor and
5 as a toy packager *as generally performed in the national economy*." [AR 27]. Although the record contains
6 no such testimony, the point is that the ALJ did not purport to rely on testimony that plaintiff could perform
7 her past work as actually performed.[1]

8 The ALJ's error cannot be deemed harmless. By relying on non-existent testimony, the ALJ failed
9 to meet his burden "to make the requisite factual findings to support his conclusion." Pinto, 249 F.3d at 844.
10 In Pinto, the Ninth Circuit reversed the ALJ's step-four finding where the ALJ made few specific findings
11 to explain his past relevant work assessment "and relied largely on the conclusions of the vocational expert,"
12 explaining that where an ALJ makes "findings only about the claimant's limitations, and the remainder of
13 the step four assessment takes place in the vocational expert's head, we are left with nothing to review."
14 Pinto, 249 F.3d at 847. Here, of course, the error is more egregious because the ALJ relied on conclusions
15 the vocational expert did not offer, and there is no evidence that the step four assessment even took place
16 "in the vocational expert's head."

17 Defendant argues that no reversible error occurred because the vocational expert testified that
18 plaintiff's past work as a child monitor and toy packager is classified in the DOT as medium work, and the
19 ALJ found that plaintiff retains the RFC for medium work. In the circumstances of this case, more than that
20 simple correspondence is needed to persuasively demonstrate that the ALJ did not commit reversible error
21 in finding that plaintiff can perform her past relevant work as generally performed. As in Pinto, the
22 vocational expert classified plaintiff past toy packaging job as that of a "hand packager." As the Ninth

---

[1] The ALJ presumably would have found that plaintiff retained the RFC to perform her past relevant work as *actually performed* if the record supported such a finding. For one thing, "[t]he regulations advise an ALJ to first consider past work as actually performed." Pinto, 239 F.3d at 845. For another, that finding would not have entailed inventing vocational expert testimony about plaintiff's ability to perform her past jobs as defined by the DOT. Furthermore, it seems clear that plaintiff could not perform at least one of her past jobs as actually performed. She testified that her in her past job as a toy packager she had to lift boxes as heavy as 60 pounds, putting it beyond her RFC for medium work. [See AR 339].

Circuit explained in Pinto, while

> "'packaging jobs' may have a common characteristic, they often involve quite different functional demands and duties requiring varying abilities and job knowledge." Indeed, the definition of "Packager, Hand" in the Dictionary of Occupational Titles contains more than two dozen different possible jobs, from Bakery Worker to Bow Maker to Coil Strapper to Inspector-Packager.

Pinto, 249 F.3d at 846 (internal ellipses omitted)(quoting SSR 82-61). Without further findings by the ALJ, it is not clear which particular DOT hand packager job most closely describes plaintiff's past toy packaging job, and consequently whether she can perform all of the functional demands and job duties involved.

In addition, the ALJ found that plaintiff had only a fifth-grade education [AR 20], making hers at best a "marginal education" suitable only for simple, unskilled work. See 20 C.F.R. § 1564(b)(2). The ALJ did not mention in his decision that plaintiff testified that she went to school in her native Mexico, suggesting that her education may have imparted even fewer vocationally relevant skills than the equivalent grade-level schooling in the United States.[2] A distinct yet related source of concern is that plaintiff answered "no" in her disability report when asked whether she can speak English, and she testified during the hearing with the assistance of a Spanish-language interpreter. [AR 63, 334]. She also testified that although she had been in the United States lawfully for 23 years, she was not a citizen (meaning that she had not passed the citizenship test in English). These facts are, or at least may be, relevant to determine whether plaintiff meets the language, reasoning, and mathematical requirements of her past work as generally performed, according to information in the DOT. See Pinto, 249 F.3d at 846 n.5 & 847 (declining to decide whether a claimant's language skills should be considered at step four "independent of the disability upon which she bases her claim," but holding that "in order for an ALJ to rely on a job description in the [DOT] that fails to comport with a claimant's noted limitations, the ALJ must definitively explain this deviation," and that neither the ALJ nor the vocational expert addressed the claimant's noted language limitations).

The step-four analysis is especially critical in this case because plaintiff is a person of advanced age

---

[2] Plaintiff testified that she completed the third grade in Mexico, but her disability report stated that she completed the fifth grade. [AR 70, 336].

1  with an unskilled work history and a marginal education or less, and those factors make it more difficult for
2  the Commissioner to meet her burden to show that plaintiff can perform alternative work at step five. See
3  Terry v. Sullivan, 903 F.2d 1273, 1275-1276 (9th Cir. 1990) ("[I]t is not enough that persons of advanced
4  age are capable of doing unskilled work; to be not disabled, they must have acquired skills from their past
5  work that are transferable to skilled or semiskilled work.") (citing 20 C.F.R. § 404, Subpart P, App. 2, Rules
6  201.04-201.08; 20 C.F.R. § 404.1568(d)); see also 20 C.F.R. §§ 404.1563(d), 416.963(d) (explaining the
7  effect of advanced age as a vocational factor). Because the ALJ relied on vocational expert's "opinion" that
8  did not exist and failed to make sufficient factual findings about plaintiff's ability to perform her past work
9  as defined in the DOT, he committed reversible legal error at step four.

**RFC assessment**

Plaintiff also contends that the ALJ did not adequately evaluate the opinions of the Commissioner's consultative psychiatrist, Dr. Bagner, and the non-examining state agency psychiatrist, Dr. Mallare. [JS9-11].

Where the opinion of a treating or examining physician is uncontroverted, the ALJ must provide clear and convincing reasons, supported by substantial evidence in the record, for rejecting it. If contradicted by that of another doctor, a treating or examining source opinion may be rejected for specific and legitimate reasons that are based on substantial evidence in the record. Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); Tonapetyan v. Halter, 242 F.3d 1144, 1148-49 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995).

The ALJ found that plaintiff had a depressive disorder NOS that was not severe. [AR 24-25]. See Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2006)("An impairment or combination of impairments may be found not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.")(internal quotation marks omitted) . Dr. Bagner, the examining psychiatrist, opined that plaintiff had a depressive disorder NOS that was well-managed with Ativan and produced only mild limitations in some areas, with mild-to-moderate limitations in handling normal stresses at work and handling a normal work week without interruption. [AR 242]. Dr. Bagner gave plaintiff a Global Assessment of Functioning ("GAF") score of 75 [AR 242], signifying "that if symptoms are present, they are transient and expectable reactions to psychosocial stressors, representing no more than a slight

impairment in social, occupational, or school functioning." See The American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders Multiaxial Assessment 32 (4th ed. 1994)(revised 2002); see also Morgan v. Commissioner of Soc. Sec. Admin., 169 F.3d 595, 598 n.1 (9th Cir. 1999). He noted that plaintiff independently engaged in self-care, activities of daily living, managing money, and going places, and that she got along well with family and liked to listen to music and read. [AR 242]. Dr. Bagner's opinion supports the ALJ's finding that plaintiff did not have a severe mental impairment because his overall assessment indicated that plaintiff was functioning well despite mild-to-moderate limitations in couple areas. The non-examining state agency physician, Dr. Mallare, found that plaintiff had mild functional limitations in three of the broad functional areas used to assess listing equivalence (activities of daily living, difficulties in maintaining social functioning, and difficulties in maintaining concentration, persistence, or pace) and no episodes of decompensation. [AR 259]. Although Dr. Mallare also completed a mental RFC assessment form indicating a few specific areas of moderate work-related limitations [AR 244-245], the ALJ correctly noted that both Drs. Mallare and Bagner endorsed mostly mild limitations, and that Dr. Bagner, who actually examined plaintiff, gave plaintiff a high GAF score and indicated in his narrative assessment that plaintiff was functioning well overall. [AR 25]. Accordingly, the ALJ did not err in finding that plaintiff had no severe mental impairment, and that finding is supported by substantial evidence in the record.

**Remedy**

In general, the choice whether to reverse and remand for further administrative proceedings, or to reverse and simply award benefits, is within the discretion of the court. See Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.) (holding that the district court's decision whether to remand for further proceedings or payment of benefits is discretionary and is subject to review for abuse of discretion), cert. denied, 531 U.S. 1038 (2000). The Ninth Circuit has observed that "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Moisa v. Barnhart, 367 F.3d 882, 886 (9th Cir. 2004) (quoting INS v. Ventura, 537 U.S. 12, 16 (2002) (per curiam)). A district court, however,

> should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for

rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004) (citing Harman, 211 F.3d at 1178). The Harman test "does not obscure the more general rule that the decision whether to remand for further proceedings turns upon the likely utility of such proceedings." Harman, 211 F.3d at 1179; see Benecke, 379 F.3d at 593 (noting that a remand for further administrative proceedings is appropriate "if enhancement of the record would be useful").

A remand for further administrative proceedings is appropriate in this case because there are outstanding issues to be resolved, namely whether plaintiff can perform her past relevant work or alternative work, and because it is not clear from the record that the ALJ must find plaintiff disabled.

## Conclusion

The Commissioner's decision is **reversed**, and this case is **remanded for further administrative proceedings** consistent with this memorandum of decision.

**IT IS SO ORDERED.**

DATED:  October 12, 2006

_____/s/_____
ANDREW J. WISTRICH
United States Magistrate Judge